UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MARK A. DI CARLO, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:14-CV-449 |
| | § | |
| ALLSTATE INSURANCE COMPANY, | § | |
| | § | |
| Defendant. | § | |

## ORDER GRANTING SUMMARY JUDGMENT

Plaintiff, Mark DiCarlo (DiCarlo) filed this declaratory judgment action against his insurance carrier, Allstate Insurance Company (Allstate), asking that Allstate provide a defense and indemnity for claims of defamation, intentional infliction of emotional distress, and invasion of privacy that family members have made against him. Allstate denied coverage under its business insurance policy and seeks summary judgment that the claims made against DiCarlo are not covered. For the reasons set out below, the court GRANTS the motion.

## BACKGROUND FACTS

According to his pleading (D.E. 1-1, pp. 6-51), DiCarlo is a resident of Corpus Christi, Texas. His elderly father, Henry DiCarlo (Henry), lived in Ohio and suffered a fall. As a result, Henry was initially admitted to Aultman Hospital in Canton, Ohio.

DiCarlo's cousins, James R. Swartz and Tonimarie Swartz, along with their mother (DiCarlo's paternal aunt) Vilma Swartz (jointly Swartzes), purported to act as Henry's caretakers. They allegedly terminated DiCarlo's power of attorney for Henry's

healthcare and, on or about April 30, 2012, without DiCarlo's knowledge, transferred Henry to Emeritus Hospice (Emeritus). Emeritus is an assisted living facility in close proximity to them, where Henry had been given a doctor's orders for hospice care. The Swartzes claim that Henry gave written consent to being placed in hospice care. DiCarlo counters that Henry's emotional or psychological state was not adequate to give valid consent.

Once Henry was at Emeritus, the Swartzes allegedly told DiCarlo (who was en route from Texas to see Henry) that Henry was being denied food, water, and medical care. Alarmed, DiCarlo sent urgent faxes to Emeritus on or about May 3, 2012, contending that the Swartzes had exerted undue influence over Henry, were purposefully withholding lifesaving measures, and were causing his death to benefit themselves financially. Henry's health quickly deteriorated and he died on or about May 9, 2012. Thereafter, DiCarlo sent his accusations against the Swartzes to the attention of one or more of the Swartzes' employers on or about July 13, 2012.

On November 7, 2012, the Swartzes filed suit against DiCarlo for libel, intentional infliction of emotional distress, and false light invasion of privacy in the Court of Common Pleas, Lake County, Ohio (D.E. 1-1, pp. 24-31). They claim serious emotional distress and injury to their professional and personal reputations. In response to these legal claims, DiCarlo made a demand for benefits under his "insured premises policy," Customizer Business Policy, No. 049878640 issued by Allstate covering the period of February 20, 2012 to February 20, 2013. Allstate argues that the Swartz allegations concern matters not covered by the policy.

## STANDARD OF REVIEW

The interpretation of a liability insurance policy is a question of law.  *See Willbros RPI, Inc. v. Continental Casualty Co.*, 601 F.3d 306 (5th Cir. 2010) (per curiam).  The Fifth Circuit, referring to the opinion in *Ewing Const. Co., Inc. v. Amerisure Ins. Co.*, 420 S.W.3d 30, 33 (Tex. 2014) as "controlling" Texas law, set out the parties' respective burdens of proof.  *Crownover v. Mid-Continent Casualty Co.*, 772 F.3d 197, 201 (5th Cir. 2014).  According to *Ewing*, the insured generally has the initial burden to establish coverage under the policy.  If he does so, then the insurer has the burden to prove that one of the policy's exclusions applies.  If the insurer proves that an exclusion applies, the burden shifts back to the insured to establish that an exception to the exclusion restores coverage.

In this summary judgment proceeding under Fed. R. Civ. P. 56, Allstate contends that DiCarlo cannot meet his initial burden to establish coverage as a matter of law because the allegations against him do not arise from "activities related to [his] business." Alternatively, Allstate argues that the policy's exclusion of coverage for "professional services" applies.  DiCarlo argues that his performance of a healthcare power of attorney for his father and his expectation of inheritance constitute his "business" and is not a "professional service." These are questions of policy interpretation.

To resolve such issues, specifically with respect to the duty to defend, the Court applies the "eight corners" rule and considers only the policy (D.E. 11–3) and the allegations in the complaint in the Swartz action (D.E. 11–2).

> According to the eight corners rule, the scope of an insurer's duty to defend against a lawsuit is determined exclusively by the allegations in the pleadings and the language of the insurance policy. *Nat'l Union Fire Ins. Co. v. Merchants Fast Motor Lines*, 939 S.W.2d 139, 141 (Tex. 1997). The scope of the duty to defend is interpreted broadly: "Where the complaint does not state facts sufficient to clearly bring the case within or without the coverage, the general rule is that the insurer is obligated to defend if there is, potentially, a case under the complaint within the coverage of the policy." *Id*. (quoting *Heyden Newport Chem. Corp. v. S. Gen. Ins. Co*., 387 S.W.2d 22, 26 (Tex. 1965)). "Terms in insurance policies that are subject to more than one reasonable construction are interpreted in favor of coverage." *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 133 (Tex. 2010).

*National Casualty Co. v. Western World Ins. Co*., 669 F.3d 608, 612–13 (5th Cir. 2012).

Courts construe insurance policies using familiar principles of contract interpretation. *Texas Farm Bureau Mut. Ins. Co. v. Sturrock*, 146 S.W.3d 123, 126 (Tex. 2004). The words of the policy are construed in their plain, ordinary, and popular sense to reflect the parties' intentions regarding the scope of coverage. *Crownover, supra* at 202. Finally, "the court should consider the policy as a whole, and interpret the policy to fulfill the reasonable expectations of the parties in the light of the customs and usages of the industry." *Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829, 841 (Tex. 2010*). See also, Crownover, supra* at 202.

## DISCUSSION

While DiCarlo is certainly a "named insured,"[1] with the policy having been issued to him, Allstate has no liability unless the claim falls within the scope of the policy's coverage. In particular, the provision for "Liabilities Covered," reads:

> We will pay on behalf of ***persons insured*** all sums which they become legally obligated to pay as damages arising out of an accidental event, personal injury or advertising injury that occurs while this policy is in effect. We will cover accidental events arising out of your completed work or products only when the accidental event occurs away from premises you own or rent and:
> 
> 1. After the work has been completed or abandoned.
> 2. The product is in the hands of the consumer.

D.E. 11-3, p. 50 (emphasis added; Coverage B-Business Liability, Part One-Comprehensive Liability).

"Persons insured" is a defined term in the policy. In relevant part, the definition states, "The following people and organizations are persons insured under this Part: 1. If you are shown in the Declarations as an individual, you and your spouse *for activities related to your business*." D.E. 11-3, p. 51 (emphasis added). Referencing this language, Allstate contends that the claims against DiCarlo are not against a "person insured" because the activities for which he has been sued are not "related to his business." Instead, they are personal.

The term "business" is not defined in the policy. Allstate suggests that the plain meaning of the term is that supplied by Webster's dictionary as "occupation, profession,

---

[1] D.E. 11-3, p. 2 (Declarations page showing that Insured is Mark DiCarlo, an individual).

or trade." D.E. 11, p. 7.  It is undisputed that DiCarlo is an attorney whose office is housed in the premises covered by the policy.  Allstate argues that DiCarlo's dispute with his relatives regarding Henry's care and their respective inheritance expectancies is not related to DiCarlo's law practice.

DiCarlo responds that Allstate's definition is too narrow and, even so, the fact that he held a power of attorney for his father's healthcare and stood to receive money or other things of value upon Henry's death qualifies this matter as part of his business. DiCarlo argues that Black's Law Dictionary, p. 179 (5th ed.) contains a more expansive definition of "business," as "Employment, occupation, profession, or commercial activity engaged in for gain or livelihood.  ***Activity or enterprise for gain, benefit, advantage, or livelihood***." D.E. 14, p. 16 (emphasis in DiCarlo's response).  Accordingly, under DiCarlo's analysis, anything that he does that might improve his financial status qualifies as his "business."

Under the insurance contract rules, however, the claim's character is defined by the source of injury rather than the more expansive context in which the claims may have arisen.  In an "eight corners" review of the pleadings, courts are to look to the factual allegations showing the origin of the damages claimed, not to the legal theories or conclusions alleged. *See Evanston Ins. Co. v. Legacy of Life, Inc*., 370 S.W.3d 377, 380 (Tex. 2012); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchants Fast Motor Lines, Inc*., 939 S.W.2d 139, 141 (Tex. 1997) (per curiam).  DiCarlo argues that the varied uses he makes of the premises for which the policy was purchased—renting and maintaining

office space and filming a public access show—expand the nature of his business. D.E. 14, pp. 11-12. But this does not change the analysis.

Here, the Swartzes are not complaining that DiCarlo injured them through actions taken pursuant to a power of attorney or by depriving them of their alleged portion of the inheritance. They do not suggest that something went wrong on the premises or that it arose from his public access show. Instead, the Swartzes are complaining of DiCarlo's correspondence to third parties, attacking the Swartzes' personal integrity and injuring their reputation with Emeritus and with their employers. The source of those injuries has nothing to do with any of the businesses DiCarlo claims to conduct.

DiCarlo suggests that, in evaluating Allstate's duty to defend, Allstate and this Court should consider DiCarlo's allegedly meritorious defenses to the Swartzes' claims. He argues that Allstate should have conducted an investigation to determine the truth of the claims against him and the strength of his defenses. Complying with this request would take the matter to be decided outside the eight corners rule, contrary to the well-established method for determining duty to defend issues. The Court rejects that approach.

## CONCLUSION

For these reasons, the Court GRANTS Allstate's motion for summary judgment because, under the eight corners rule, the claims made against DiCarlo for which he seeks insurance coverage do not arise from activities related to his business. The Court need not reach Allstate's alternative argument that, if the claims did relate to his business, the business is a "professional service," which is specifically excluded from coverage.

Because the claims do not fall within the duty to defend, they are also insufficient to trigger the duty to indemnify.[2] Therefore, Allstate is entitled to dismissal of all of DiCarlo's claims.

       ORDERED this 29th day of January, 2015.

                                                _____
                                                NELVA GONZALES RAMOS
                                                UNITED STATES DISTRICT JUDGE

---

[2] *See generally, Texas Ass'n of Counties Cnty. Gov't Risk Mgmt. Pool v. Matagorda Cnty.*, 52 S.W.3d 128, 135 (Tex. 2000) (citing *Farmers Texas County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997)).